**IN THE UNITED STATES DISTRICT COURT**
**FOR THE  WESTERN DISTRICT OF PENNSYLVANIA**

SALVADOR SANTIAGO,                    )
                                      )
            Petitioner,               )
                                      )
      v.                              )
                                      )      CIVIL ACTION NO. 04-1669
JEFFREY BEARD, et al.                 )
                                      )
            Respondents.              )

### MEMORANDUM OPINION

CONTI, District Judge.

**I.      Introduction**

      In September 1992, a jury empaneled by the Court of Common Pleas of Allegheny

County sentenced Petitioner Salvador Santiago ("Santiago") to death for murdering Patrick

Huber during a 1985 robbery of the Minuteman Press, located on the South Side of Pittsburgh.

Santiago filed with this court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in

which he argues that the proceedings against him were infected with federal constitutional error

and that he is entitled to a new trial or, at a minimum, a new sentencing hearing.  In support, he

raises twenty claims and numerous sub-claims for relief.[1]

      Santiago contends that he is entitled to an evidentiary hearing on the following five

claims:  his due process rights were violated because he was tried while incompetent (**Claim

1.A**); his defense attorneys provided him with constitutionally ineffective assistance with respect

_____

      [1] Santiago initially raised twenty-one claims, but he has withdrawn Claim 5.  (Doc. No.
42 at 2 n.3).

to the competency issue (**Claim 1.B**); his defense attorneys provided him with constitutionally ineffective assistance because they did not reasonably investigate his life history and mental illness, resulting in the failure to present available mental health defenses at the guilt phase of his trial (**Claim 14**) and weightier and additional available mitigating evidence at the sentencing hearing (**Claim 3**); and, his constitutional rights were violated because the judge who presided over his trial and his subsequent state post-conviction proceeding, the Honorable Jeffrey A. Manning of the Court of Common Pleas of Allegheny County, was biased (**Claim 21**).

For the reasons set forth below, the court will grant Santiago's request for an evidentiary hearing on Claim 3 and Claim 14, and deny his request for a hearing on Claim 1.A, Claim 1.B, and Claim 21.

## II.     Relevant Factual and Procedural Background

The Commonwealth of Pennsylvania twice tried Santiago for the murder of Patrick Huber and for robbery.  The Honorable John L. Musmanno, who at the time was a judge on the Court of Common Pleas of Allegheny County, presided over the first trial in April 1986.  In support of its case, the Commonwealth introduced a confession that Santiago had given to the police.  Santiago presented a mental infirmity/insanity defense and a psychiatrist, Robert Wettstein, M.D., testified to support this defense.  The jury found Santiago guilty of first degree murder and robbery. Following a separate penalty hearing, he was sentenced to death.

On direct appeal, the Supreme Court of Pennsylvania held that Santiago's confession was obtained in violation of his Fifth Amendment rights.  Commonwealth v. Santiago, 599 A.2d 200 (Pa. 1991) ("Santiago I").  It overturned his convictions and awarded him a new trial.

The Commonwealth retried Santiago in September 1992 in a jury trial presided over by Judge Manning (hereinafter the "1992 retrial"). James Schwartz, Esquire, ("Schwartz") and Lawrence O'Toole, Esquire, ("O'Toole") represented Santiago.[2] Schwartz was responsible for handling the guilt phase of Santiago's trial, and O'Toole was responsible for handling the sentencing phase.

In contrast to his first trial, at his 1992 retrial Santiago did not present a mental infirmity/insanity defense. He challenged the sufficiency of the Commonwealth's evidence against him. The jury credited the Commonwealth's case and found Santiago guilty of first degree murder and robbery. Following a separate penalty hearing, he was sentenced to death. John Elash, Esquire, ("Elash") was appointed to represent Santiago on direct appeal. On June 20, 1995, the Supreme Court of Pennsylvania affirmed his judgment of conviction and sentence. Commonwealth v. Santiago, 662 A.2d 610 (Pa. 1995) ("Santiago II"). The Supreme Court of the United States denied *certiorari* on January 8, 1996. Santiago v. Pennsylvania, 516 U.S. 1053 (1996).

In or around August 1996, Santiago, through Robert Dunham, Esquire, ("Dunham") and Billy Nolas, Esquire, ("Nolas") then of the Pennsylvania Post-Conviction Defender Organization, filed a petition for collateral relief in the Court of Common Pleas of Allegheny County pursuant to the Pennsylvania Post Conviction Relief Act, 42 PA.CONS.STAT. § 9541 *et seq.* (the "PCRA"). (Commonwealth Ex.[3] 45). Judge Manning presided over the PCRA proceeding.

---

[2] Subsequent to Santiago's 1992 retrial, on March 5, 1993, O'Toole became a judge on the Court of Common Pleas of Allegheny County.

[3] All "Commonwealth Ex." citations are to those documents attached to the Answer to Petition for Writ of Habeas Corpus, which are docketed at Docket Numbers 35 through 38.

In his PCRA petition, Santiago contended, as he does in Claim 1.A and Claim 1.B of the his federal habeas petition, that his due process rights were violated because he was not competent to stand trial at his September 1992 retrial, and that his defense counsel provided him with ineffective assistance for failing to develop and present available evidence of his incompetency. (Id. at 4-30, 129). He also contended, among other things, that his defense counsel failed to investigate reasonably his life history and mental illness and that as a result they failed to present available mental health defenses at the guilt phase of his trial and weightier and additional mitigating evidence at the sentencing hearing (Claim 14 and Claim 3, respectively, of his federal habeas petition). (Id. at 126-31).

Santiago requested an evidentiary hearing on all disputed issues of material fact relating to the disposition of the claims raised in the PCRA petition. (Id. at 1, 152). The Commonwealth acknowledged that Santiago was entitled to an evidentiary hearing on his competency claim and on his related ineffective assistance of counsel claim. (See Commonwealth's Answer to Post-Conviction Petition[4] at 16, 31-66, 118, 149). The Commonwealth, however, contended that Santiago's remaining PCRA claims should be denied without a hearing. The PCRA court granted Santiago's request for an evidentiary hearing on his claims that he was incompetent at the time of the 1992 retrial and that his defense counsel were ineffective in their handling of the competency issue. It denied Santiago's request for a hearing in all other respects and ruled that it would dismiss Santiago's other PCRA claims. (Commonwealth Exs. 46, 62; PCRA Hearing Tr., Vols. 1-3).

---

[4] The Commonwealth's Answer to the state post-conviction petition is contained in the original state court record, which Respondents also have submitted to this court.

The PCRA evidentiary hearing was held on February 5-7, 1997. Santiago's counsel, Nolas, called the following six mental health experts as witnesses: (1) Jonathan M. Himmelhoch (a forensic psychologist who first interviewed Santiago in 1985 and who testified at the 1992 retrial sentencing hearing); (2) Henry L. Dee (a psychologist who evaluated Santiago to support the PCRA petition); (3) Fred Gallo (a psychologist who evaluated Santiago in 1985 for the purpose of determining his competency in an unrelated criminal trial that had been held in the Court of Common Pleas of Lawrence County); (4) Lawson F. Bernstein (a psychiatrist who treated Santiago at the time of his 1992 retrial); (5) Robert Wettstein (the psychiatrist who evaluated Santiago prior to his first trial, whose prior testimony was admitted by the prosecution at the 1992 retrial during the guilt phase, and who testified at the 1992 retrial sentencing hearing); and, (6) Robert Fox (a psychiatrist who examined Santiago to support the PCRA petition). Nolas also called Schwartz to testify and he questioned him about his investigation into Santiago's competency at the time of the 1992 retrial. The Commonwealth presented the testimony of Elash and O'Toole.

On February 26, 1997, the PCRA court issued an Order of Court in which it held:

a)      the defendant has failed to establish by a preponderance of the evidence that at the time of trial in 1992 he was substantially unable to understand the nature of the charges against him, the consequences of the proceedings and to participate and assist in his defense, *i.e.* that he was incompetent to stand trial; the Court further finding as a fact that the defendant was competent to stand trial;

b)      the defendant failed to establish by a preponderance of the evidence that at the time of his September 1992 trial his trial counsel were ineffective for failing to raise as an issue his competency to stand trial, for failing to have him examined to determine competency to stand trial and for failing to seek a hearing on his competency. Counsel were in no wise [sic] ineffective.

(Commonwealth Ex. 47).

Santiago filed an appeal with the Superior Court of Pennsylvania and the PCRA court issued an Opinion as required by Pennsylvania Rule of Appellate Procedure 1925(c). (Commonwealth Exs. 54-59). The Superior Court transferred Santiago's appeal to the Pennsylvania Supreme Court because it was a capital case. (Commonwealth Ex. 60).

In his appeal, Santiago challenged the PCRA court's decision to deny his claims. (Commonwealth Ex. 63). He also raised an additional claim that he had not presented in the PCRA petition: that he was denied his rights under the Fifth, Eighth and Fourteenth Amendments because the judge who presided over his 1992 retrial and his PCRA proceeding is biased (Claim 21 of his federal habeas petition). (Id. at 38-44). He pointed to no specific instance of bias directed towards him, but alleged generally that the judge is biased against the African-American defendants that appear before him.[5] (Id.; see Commonwealth Ex. 64 at 9-11). Santiago asserted that he was unable to raise the judicial bias claim in his PCRA petition because the facts supporting the claim were "completely unknown to him" at that time and did not become public until *after* he had filed his notice of appeal. (Id. at 38-39).

On August 17, 2004, the Pennsylvania Supreme Court issued an opinion affirming the denial of PCRA relief. Commonwealth v. Santiago, 855 A.2d 682 (Pa. 2004) ("Santiago III"). Regarding the judicial bias claim, the court held that the claim was waived for the purposes of that proceeding because it was not raised in the PCRA petition that was the subject of the appeal. Id. at 691. Acknowledging Santiago's assertion that he could not have raised the claim during the Court of Common Pleas PCRA proceeding because the facts supporting the claim were unknown

---

[5] Santiago is of African and Puerto Rican decent.

to him at that time, the court instructed: *"The proper vehicle for raising this claim is thus not the instant appeal, but rather is a subsequent PCRA petition."* Id. (citing Commonwealth v. Lark, 746 A.2d 585 (Pa. 2000) (emphasis added)).

Next, Santiago filed with the Pennsylvania Supreme Court an application seeking reargument on: (1) the claims related to his competency during the 1992 retrial; (2) a claim regarding an alleged improper jury instruction; and, (3) a claim that his counsel was ineffective for failing to request a specific jury instruction. (Commonwealth Ex. 66). The court denied the application for reargument on October 29, 2004. (Commonwealth Ex. 67). Santiago did not file a second PCRA petition in order to litigate the judicial bias claim.

On November 1, 2004, Santiago, through Nolas and Dunham, commenced this habeas proceeding by filing a motion for appointment of counsel, for *informa pauperis* status, and for stay of execution, which this court granted.[6] (Doc. Nos. 1-2). Santiago subsequently filed his Petition for Writ of Habeas Corpus (Doc. No. 24) and Memorandum of Law in Support (Doc. No. 28). Respondents Jeffrey Beard, the Commissioner of the Pennsylvania Department of Corrections, Louis Folino, the Superintendent of the State Correctional Institution at Greene, and Franklin J. Tennis, the Superintendent of the State Correctional Institution at Rockview ("Respondents") filed their Answer (Doc. Nos. 35-38), to which Santiago filed a Reply (Doc. No. 42). Santiago filed a Supplemental Brief Regarding Evidentiary Hearing on Claims 1, 3, 14 & 21 (Doc. No. 46), and Respondents filed a responsive brief (Doc. No. 47), to which Santiago has filed a reply (Doc. No 48).

---

[6] Nolas and Dunham are now with the Defender Association of Philadelphia, Capital Habeas Unit. On July 5, 2007, Cristi A. Charpentier, Esquire, of the Community Defender Office in Philadelphia also entered her appearance on behalf of Santiago.

# III. Discussion

## A. AEDPA's Deference to State Court Factual Determinations and Limitations on Evidentiary Hearings

Santiago's application for writ of habeas corpus is governed by the federal habeas corpus statute for state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132 § 104, 110 Stat. 1214. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Under AEDPA, state court factual determinations are given deference. See, e.g., Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). A petitioner must establish that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Within this overarching standard, a petitioner may attack specific factual determinations that are subsidiary to the ultimate decision pursuant to 28 U.S.C. § 2254(e)(1), which provides: "[A] determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See Lambert, 387 F.3d at 235.

AEDPA also limits the ability of a federal district court to hold an evidentiary hearing in habeas review. 28 U.S.C. § 2254(e)(2);[7] see Williams v. Taylor, 529 U.S. 420 (2000); Goldblum

---

[7] As discussed *infra*, 28 U.S.C. § 2254(e)(2) prohibits an evidentiary hearing in a habeas case if the petitioner "failed to develop the factual basis of a claim in State court proceedings[.]" When section 2254(e)(2) applies, a district court may conduct an evidentiary hearing on a claim that a petitioner "failed to develop" in state court in two limited circumstances: (1) if the claim

-8-

v. Klem, 510 F.3d 204, 220-21 (3d Cir. 2007); Taylor v. Horn, 504 F.3d 416, 435-37 (3d Cir. 2007); Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006); Thomas v. Varner, 428 F.3d 491, 497-99 (3d Cir. 2005), *cert. denied sub nom.,* 127 S.Ct. 928 (2007). Under AEDPA, if a state prisoner "*has developed* the factual basis of his claims in the state court, *he is not entitled to an evidentiary hearing*" in federal court. Goldblum, 510 F.3d at 220 (citing 28 U.S.C. § 2254(e)(2)) (emphasis added); see Rolan, 445 F.3d at 680-81 (district court erred in conducting an evidentiary hearing on a claim when the state court had conducted a hearing on the same issue). In such a circumstance, the district court should examine the factual record developed before the state court and review the state court's factual findings under the appropriate standard of review set forth in 28 U.S.C. § 2254(d)(2) and (e)(1). Taylor, 504 F.3d at 435-37; Rolan, 445 F.3d at 680-81.

If the factual record *was not developed in the state court proceeding*, the district court must consider whether the failure to develop the record is attributable to the petitioner. Taylor, 504 F.3d at 435-37; Thomas, 428 F.3d at 498-99. If the failure to develop the record *is attributable to the petitioner*, AEDPA prohibits an evidentiary hearing in federal court. 28 U.S.C. § 2254(e)(2). In Williams v. Taylor, 529 U.S. 420 (2000), the United States Supreme Court explained that "a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432. "Diligence," the Supreme Court continued, "will require in the usual case

_____

relies on a new rule of constitutional law which has been made retroactive to cases on collateral review by the United States Supreme Court; or (2) if the factual predicate of the claim could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i), (ii). Santiago does not argue that either circumstance is implicated on any of the claims for which he seeks an evidentiary hearing.

that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Id. at 437; see Thomas, 428 F.3d at 497-98.

If the failure to develop the factual basis of a claim in the state court *is not attributable to the petitioner*, then it is within the district court's discretion to grant an evidentiary hearing on a claim. Schriro v. Landrigan, — U.S. — , 127 S.Ct. 1933, 1937, 1939 n.1 (2007); Rolan, 445 F.3d at 680-81; Thomas, 428 F.3d at 497-98. In deciding whether to exercise that discretion, the district court "must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief" under AEDPA's standards of review. Landrigan, 127 S.Ct. at 1940 (citation omitted).

## B.     Claim 1.A and Claim 1.B

Santiago asserts that he is entitled to habeas relief on Claim 1.A based upon the current record. (Doc. No. 46 at 3). He argues, however, that the PCRA court's factual finding that he was competent at the time of the 1992 retrial "flies in the face of overwhelming testimony of six mental health experts," and therefore this court would be "justified" in hearing all the witnesses who testified at the PCRA hearing in its own evidentiary hearing. (Id. at 5-6). This argument is not in accord with decisions of the Court of Appeals for the Third Circuit, which direct that because the PCRA court held an evidentiary hearing on Santiago's competency claim, he is not entitled to an evidentiary hearing on that issue in this court. Taylor, 504 F.3d at 435-37 (district court properly denied the petitioner's request for an evidentiary hearing on a claim that he was not competent to stand trial because the petitioner had the opportunity to present evidence of his incompetency during his state proceedings, including at his state PCRA hearing); see Goldblum,

510 F.3d at 220-21; <u>Rolan</u>, 445 F.3d at 678-81.

      Santiago's request for an evidentiary hearing on Claim 1.B is also denied.  He argues that this court should hold an evidentiary hearing on Claim 1.B "for the reasons stated in connection with Claim 1.A" – because the PCRA court's finding that he was competent at the 1992 retrial is, according to him, not supportable.  (<u>Id.</u> at 9).  As set forth above, Santiago is not entitled to an evidentiary hearing on the issue of his competency.

      Santiago also asserts that the PCRA court denied him a hearing on Claim 1.B, but a review of the state court record demonstrates that the PCRA evidentiary hearing encompassed both his substantive competency claim (Claim 1.A) as well as his related ineffective assistance of counsel claim (Claim 1.B).  Although the PCRA transcript reflects that there was some initial questioning on Nolas's part about the scope of the PCRA hearing (PCRA Hearing Tr., Vol. I, at 4-8), a review of the entire transcript shows that Santiago was permitted to introduce evidence to support his claim that his defense counsel provided him with ineffective assistance on matters related his competency at the time of the 1992 retrial.  Nolas called Schwartz to testify at the PCRA hearing and he questioned him regarding his investigation into Santiago's competency prior to and during the 1992 retrial.  (PCRA Tr., Vol. 3, at 389-457).  He did not call O'Toole to testify, but the Commonwealth did and on cross-examination Nolas questioned him about issues related to Santiago's competency at the time of the 1992 retrial.  (<u>Id.</u> at 597-605, 610-11).  Thus, at the PCRA hearing Santiago had the opportunity to develop, and did develop, evidentiary support for the factual allegations raised in Claim 1.B and, therefore, he is not entitled to a hearing on that claim in this court.  <u>Taylor</u>, 504 F.3d at 435-37; <u>Goldblum</u>, 510 F.3d at 221; <u>Rolan</u>, 445 F.3d at 678-81.

### C.     Claim 3 and Claim 14

A different conclusion is warranted with regard to Claim 3 and Claim 14.  Santiago requested an evidentiary hearing on these claims during the PCRA proceeding, but the PCRA court denied his request.  Santiago showed the kind of diligence needed to avoid AEDPA's bar to an evidentiary hearing in federal habeas on Claim 3 and Claim 14.  Williams, 529 U.S. at 437; Thomas, 428 F.3d at 498-99; Marshall v. Hendricks, 307 F.3d 36, 105-117 (3d Cir. 2002).  It therefore is within this court's discretion to grant him an evidentiary hearing on these two claims.  Santiago makes numerous factual assertions in these claims, and he has not had the opportunity to present testimonial evidence at a hearing to support those assertions, nor has the Commonwealth had the concomitant opportunity to challenge those assertions at a hearing.  Most importantly, neither Schwartz nor O'Toole has testified regarding the factual assertions made in support of Claim 3 and Claim 14.  See Thomas, 428 F.3d at 498-99 (recognizing the importance of having testimony from former counsel on some claims of ineffective assistance).

The Commonwealth argues that Santiago's request for an evidentiary hearing on Claim 3 and Claim 14 should be denied because Santiago "fully developed" the factual support for these claims at the PCRA evidentiary hearing.  (Doc. No. 47 at 16, 19).  This argument is not supportable.  The issues addressed at the PCRA evidentiary hearing were whether Santiago was competent *at the time of the 1992 retrial* and whether his attorneys provided him with effective assistance regarding competency issues at the time of that retrial.  Those issues are different than the issues posed by Claim 3 and Claim 14 – whether Santiago suffered from mental diseases and defects *at the time of the offense in 1985* that would have provided viable mental state defenses at the guilt phase and weightier and additional mitigation evidence at the penalty phase, and

whether counsel reasonably investigated these matters. Based upon a review of the submissions, the court finds that an evidentiary hearing to develop the record solely with respect to Claim 3 and Claim 14 is appropriate.

Santiago described the evidence that he would present at a hearing on Claim 3 and Claim 14 (see Doc. No. 21, ¶¶ 117-70, 324-49; Doc. No. 28 at 10-20, 51-61), and he explained that this evidence is available from Schwartz and O'Toole, from mental health experts, from his family members, and from records documenting his life history and mental illness. (Doc. No. 46 at 9-10). He asserted that an evidentiary hearing will be an efficient use of judicial resources. (Id. at 11 n.4). To that end, the parties are directed to evaluate what factual issues related to Claim 3 and Claim 14 are not in dispute, and are reminded that uncontested evidence may be admitted to the record outside of an evidentiary hearing pursuant to Rule 7 of the Rules Governing Habeas Corpus Cases Under Section 2254, which, in an effort to "eliminate some unnecessary hearings[,]" permits a district court to expand the record in a case to include "additional materials relevant to the determination of the merits of the petition." Advisory Committee Notes to Rule 7 of the Rules Governing Habeas Corpus Cases Under Section 2254; see Landrigan, 127 S.Ct. at 1938 (district court expanded the record to include evidence of the petitioner's troubled background, his history of drug and alcohol abuse, and his family's history of criminal behavior).

### D.     Claim 21

With respect to Santiago's request for an evidentiary hearing on Claim 21, he contends that his constitutional rights were violated because a biased judge presided over: (1) his PCRA proceeding in the Court of Common Pleas, and (2) his 1992 retrial. He states that "it may be

appropriate for this Court to await the Third Circuit's guidance" in resolving Claim 21 because it

has a case before it in which it is deciding whether a similar claim of judicial bias during a PCRA

proceeding is cognizable in federal habeas corpus. (Doc. No. 42 at 33). On March 27, 2008, the

Court of Appeals for the Third Circuit decided that issue in Abu-Jamal v. Horn, 520 F.3d 272 (3d

Cir. 2008). It expressly held that a claim of judicial bias during a PCRA proceeding cannot be

grounds for federal habeas corpus relief. Id. at 297. Therefore, Santiago's contention in Claim

21 that his PCRA proceeding was presided over by a biased judge does not state a claim upon

which habeas relief can be granted.

The only cognizable claim for relief articulated in Claim 21 is Santiago's contention that

he is entitled to habeas relief because his 1992 retrial was presided over by a biased judge. In

disposing of this judicial bias claim in Santiago III, the Pennsylvania Supreme Court held that it

was waived for the purposes of that appeal because it had not been raised in the PCRA petition

that was the subject of the appeal. 855 A.2d at 691 (citing Commonwealth v. Bond, 819 A.2d 33

(Pa. 2002) (discussing waiver rules)). Pursuant to Pennsylvania Rule of Appellate Procedure

302(a) ("Pa. Appellate Rule 302(a)"): "Issues not raised in the lower court are waived and cannot

be raised for the first time on appeal."[8] In response to Santiago's assertion that he could not have

---

[8] A claim also can be waived under the PCRA pursuant to the separate and distinct
waiver rule set forth in 42 Pa.Cons.Stat. § 9544(b), which provides that "an issue is waived if
the petitioner *could have raised it* but failed to do so before trial, at trial, during unitary review,
on appeal or in a prior state postconviction proceeding." (emphasis added); see Bond, 819 A.2d
at 33, 52. The court in Santiago III, however, did not apply the waiver rule set forth in section
9544(b), because it instructed that the proper vehicle for raising the claim was a second PCRA
petition. The court did not hold that Santiago *could have raised* the claim during the PCRA
proceeding before the Common Pleas Court. Rather, as discussed *infra*, it indicated that a
determination on whether Santiago could have raised the judicial bias claim earlier would be
made during a second PCRA proceeding, if Santiago sought such review. If Santiago had sought
a second PCRA proceeding, he would have had the opportunity to demonstrate that the facts

raised the claim earlier, the Pennsylvania Supreme Court instructed: *"The proper vehicle for raising this claim is thus not the instant appeal, but rather is a subsequent PCRA petition."* Id. (citing <u>Commonwealth v. Lark</u>, 746 A.2d 585 (Pa. 2000) (emphasis added)).

Under Pennsylvania law, Santiago had sixty days from the date of the Pennsylvania Supreme Court's order finally resolving his first PCRA petition to file a second PCRA petition and raise his judicial bias claim. 42 PA.CONS.STAT. § 9545(b)(1)(ii), (b)(2); <u>Lark</u>, 746 A.2d at 588. The Pennsylvania Supreme Court issued it decision in <u>Santiago III</u> on August 17, 2004, and denied reargument on October 29, 2004. Assuming that the sixty-day state limitations period for filing a second PCRA petition based upon newly discovered evidence ran from the date reargument was denied, he had until on or about December 28, 2004 to file a second PCRA

---

upon which his judicial bias claim is predicated were indeed unknown to him during the litigation of the first PCRA petition and could not have been ascertained by the exercise of due diligence. 42 PA.CONST.STAT. § 9545(b)(1)(ii).

Additionally, the Pennsylvania Supreme Court's application of Pa. Appellate Rule 302(a) does not automatically result in an implicit finding that the claim could have been raised before the court of common pleas or that the claim is waived with prejudice. Consistent with the decision in <u>Santiago III</u>, in other decisions in which a petitioner has raised a claim for first time on a PCRA appeal and has argued that the claim could not have been raised earlier because it is based on newly discovered evidence, the Pennsylvania Supreme Court has applied Pa. Appellate Rule 302(a), has held the claim is waived for the purposes of the pending appeal, and has directed the petitioner to pursue the "new" claim in a second or subsequent PCRA petition once the pending appeal concluded. <u>Commonwealth v. Jones</u>, 815 A.2d 598, 607-08 (Pa. 2002) (the petitioner claimed "issue 9" could not have been raised in the PCRA petition because it was based on newly discovered evidence; the court held that issue 9 was waived for the purposes of the pending appeal under Pa. Appellate Rule 302(a), but held the claim could be pursued via a second PCRA petition); <u>Commonwealth v. Edmiston</u>, 851 A.2d 883, 889 (Pa. 2004) ("Argument VII" of the petitioner's appeal was waived under Pa. Appellate Rule 302(a) because it was not raised in his PCRA petition; the proper vehicle for raising the new claim is a subsequent PCRA petition). <u>But see</u> <u>Commonwealth v. Mouzon</u>, 812 A.2d 617, 623 n.10 (Pa. 2002) (rejecting the Commonwealth's argument on direct appeal that a claim was waived under Pa. Appellate Rule 302(a) and stating that a claim will not be considered waived if it could not have been raised in the lower tribunal.)

petition and raise his judicial bias claim. In a second PCRA proceeding, he would have had the opportunity to demonstrate that the state court had jurisdiction over his second PCRA petition because "the facts upon which [the judicial bias claim] is predicated were unknown [to him when he was litigating his first PCRA petition before the Court of Common Pleas] and could not have been ascertained by the exercise of due diligence." Id. § 9545(b)(1)(ii).

Santiago did not pursue a second PCRA petition. Because he did not, Respondents contend, he failed to exhaust properly the judicial bias claim and he has waived, or procedurally defaulted, that claim. Therefore, they assert, he is not entitled to develop evidentiary support for that claim, since this court cannot review it on the merits. The court concludes Respondents' argument is correct.

The federal habeas corpus statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that" "the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). It further provides, in section 2254(c), that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." Id. § 2254(c).

Santiago contends that he exhausted his judicial bias claim because he presented the claim during the appeal in Santiago III and he was only required to present the claim to a state court one time. That argument is not persuasive. See Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review, because state law required that ineffective

assistance claims be raised in state post-conviction review, and the petitioner had not sought such review).  The United States Supreme Court has held that although section 2254(c) does not require "a state prisoner to invoke any possible avenue of state court review" in order to exhaust properly a claim, it does require "that state prisoners give state courts a *fair* opportunity to act on their claims."  O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (emphasis in original) (citations omitted).  Under the circumstances of this case, the exhaustion doctrine required Santiago to raise his judicial bias claim in a second PCRA petition.  See Slutzker v. Johnson, 393 F.3d 373, 379-80 (3d Cir. 2004) (petitioner did not exhaust his habeas claim of prosecutorial misconduct; that claim was premised upon newly discovered evidence and he failed to return to state court and file a second PCRA petition under the mechanism available under state law for litigating such claims, 42 Pa.Cons.Stat. § 9545(b)(1)).

In this case, the Pennsylvania Supreme Court specifically instructed Santiago that the proper vehicle for raising the judicial bias claim was a second PCRA petition.  It cited to Commonwealth v. Lark, 746 A.2d 585 (Pa. 2000), which informed him that he had sixty days from the date of the order that finally resolved his first PCRA petition to file a second PCRA petition.  Thus, at the time Santiago commenced proceedings here in November 2004, he still had the right under Pennsylvania law to raise his judicial bias claim in state court and the state court should have been provided with the opportunity to address this claim in a second PCRA proceeding.  Pursuing a second PCRA petition would not have been extraordinary or unduly burdensome to Santiago.  Therefore, Respondents' contention that Santiago failed to exhaust properly this claim has merit.  To hold otherwise would undercut the considerations of federal-state comity that the exhaustion requirement seeks to promote.  To "protect the integrity" of the

federal exhaustion rule, federal habeas courts must "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies[.]" O'Sullivan, 526 U.S. at 848 (emphasis in original); Ellison, 484 F.3d at 660-62.

Because Santiago did not file a second PCRA petition he waived, or procedurally defaulted, the judicial bias claim. There was a state procedure available to him to litigate his judicial bias claim after his appeal in Santiago III concluded, and when he did not avail himself of that procedure, he foreclosed his ability to receive federal habeas review of that claim. See Whitney v. Horn, 280 F.3d 240, 250-53 (3d Cir. 2002); Lines v. Larkin, 208 F.3d 153, 162-66 (3d Cir. 2000).[9]

Santiago argues that Claim 21 is not procedurally defaulted because when he waived the claim for the purposes of the PCRA petition on review in Santiago III (in around 1996 and 1997

---

[9]  When a petitioner has failed to exhaust properly a claim, the federal district court should require that he return to state court and attempt to litigate that claim there *if state procedural rules still permit him to raise the claim in state court.* See Slutzker, 393 F.3d at 739-81; Crews v. Horn, 360 F.3d 146 (3d Cir. 2004). When a petitioner would be barred under state law from raising a claim because he failed to comply with a state procedural rule – such as a statute of limitations – the Court of Appeals for the Third Circuit, however, has recognized that it would be "futile" to require the petitioner to return to state court. Under that circumstance, the court of appeals has held that the petitioner is technically excused from having to comply with the exhaustion requirement, *but that the claim is procedurally defaulted.* Id. at 379-81; Whitney, 280 F.3d at 250-53; Lines, 208 F.3d at 162-63, 166 (when exhaustion is futile, the claim is procedurally defaulted; "The equitable principles governing habeas relief will not permit [the petitioner] to create a situation in which seeking state post-conviction relief is futile, and then invoke that same futility to avoid the exhaustion requirement.")

Requiring Santiago to return to state court to attempt to litigate the judicial bias claim would be a futile because the PCRA statute of limitations period expired on or around December 28, 2004 and, therefore, he cannot comply with it. 42 Pa.Cons.Stat. § 9545(b)(1)(ii), (b)(2). The PCRA time limits, including the sixty-day time limit for filing a second PCRA petition based upon newly discovered evidence, "are mandatory and jurisdiction in nature" and the state courts strictly enforce them. Slutzker, 393 F.3d at 380 (citing Commonwealth v. Murray, 753 A.2d 201, 203 (Pa. 2000)); Whitney, 280 F.3d at 251; Lines, 208 F.3d at 165.

when he was litigating his PCRA petition before the PCRA court), Pennsylvania law followed a "relaxed waiver" rule in capital cases.[10]  (Doc. No. 46 at 1-2; <u>see</u> Doc. No. 28; Doc. No. 42 at 1, 3).  Therefore, he asserts, at that time state law did not notify him adequately that if he failed to raise a claim before the PCRA court, it would be waived on appeal.  This argument is not persuasive.  Under a procedural default analysis, this court must look to the time period during which Santiago *actually waived his judicial bias claim for federal habeas corpus review* and consider whether state law notified him adequately about the proper procedures for raising the claim in state court.  Santiago's waiver of the judicial bias claim for the purpose of federal habeas corpus review did not occur when he failed to raise Claim 21 in 1996-1997 while he was litigating his PCRA petition before the Court of Common Pleas.  Rather – as outlined above – his waiver occurred between on or about October 29, 2004 through December 28, 2004, when he failed to raise that claim in a second PCRA petition.  At that time, Pennsylvania law provided

---

[10]  Under the "relaxed waiver" rule, the Pennsylvania Supreme Court would review the merits of claims raised in capital PCRA proceedings, regardless of any alleged procedural bar at issue.  <u>Bronshtein v. Horn</u>, 404 F.3d 700, 708-09 (3d Cir. 2005) (collecting Pennsylvania cases).  On November 23, 1998, the Pennsylvania Supreme Court issued its decision in <u>Commonwealth v. Albrecht</u>, 720 A.2d 693 (Pa. 1998), in which it declared that it would no longer follow the "relaxed waiver" rule in capital PCRA cases.  <u>Bronshtein</u>, 404 F.3d at 709 (citing <u>Albrecht</u>, 720 A.2d at 700; <u>Commonwealth v. Peterkin</u>, 722 A.2d 638 (Pa. 1998); <u>Commonwealth v. Banks</u>, 726 A.2d 374 (Pa. 1999)).  When the Pennsylvania Supreme Court issued <u>Santiago III</u> in 2004, the "relaxed waiver" rule was no longer in effect.  Its ruling on the judicial bias claim, therefore, was in accord with Pennsylvania law.

To ameliorate the effect application of the "waiver" rule would have on a capital petitioner who (like Santiago) claimed that he discovered new evidence to support post-conviction relief when his appeal was pending, the Pennsylvania Supreme Court adopted the rule announced in <u>Commonwealth v. Lark</u>, 746 A.2d 585 (Pa. 2000), the decision cited by the court in <u>Santiago III</u>.  <u>See</u> <u>Bronshtein</u>, 404 F.3d at 709 n.10.  As discussed *supra*, the rule announced in <u>Lark</u> allows a petitioner who waived a claim on appeal because he did not raise it before the court of common pleas to pursue a second PCRA proceeding, provided he can satisfy the requirements of 42 Pa.Cons.Stat. § 9545(b).

Santiago with notice that he had sixty days from the date the Pennsylvania Supreme Court finally resolved his first PCRA petition to file a second PCRA petition and that if he failed to comply with the PCRA statute of limitations he would be foreclosed from raising the claim in state court in the future.[11] Id. at 380 (citing Pennsylvania decisions discussing sixty-day PCRA limitations); see Lark, 746 A.2d at 493-94.

In conclusion, Santiago is not entitled to an evidentiary hearing on Claim 21. The portion of that claim in which he contends that he is entitled to habeas relief because his PCRA proceeding was presided over by a biased jurist is not cognizable in federal habeas corpus. The remaining portion of that claim – his 1992 retrial was presided over by a biased jurist – is procedurally defaulted.[12] Out of respect for finality, comity, and the orderly administration of

---

[11] If Santiago had filed a second PCRA petition and if the state court refused to review it on the merits because it determined that the petition did not fall within the exception to the PCRA limitations period set forth in 42 PA.CONS.STAT. § 9545(b)(1)(ii), the issue here would have been different. Compare Slutzker, 393 F.3d at 379-81 (petitioner did not file a second PCRA petition when he could have; therefore, claims were procedurally defaulted), with Taylor, 504 F.3d at 423-28 (state court rejected the petitioner's contention that his second PCRA petition was timely based upon newly discovered evidence; federal habeas court had to determine whether the state court's holding on that issue qualified as an "adequate" rule under the procedural default doctrine).

[12] A federal court may only reach the merits of a procedurally defaulted claim if the petitioner makes the standard showing of "cause and prejudice" or establishes a "fundamental miscarriage of justice" in order to overcome the procedural default. See Murray v. Carrier, 477 U.S. 478, 485, 495 (1986). Santiago does not argue that he satisfies either requirement. To the extent Santiago would argue that he can establish "cause" because he was concerned that filing a second PCRA petition would compromise his ability to file a timely federal habeas petition with this court under AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(2), that argument would be without merit. In order to avoid issues with AEDPA's limitations period, Santiago could have commenced a "protective" habeas proceeding here and requested that this court stay and abey this proceeding while he returned to state court to litigate his judicial bias claim in a second PCRA petition. Crews, 360 F.3d at 154-55 (decided March 4, 2004 and approving the use of the stay and abey procedure in the Third Circuit); Rhines v. Weber, 544 U.S. 269, 275 (2005); see Lines, 208 F.3d at 163 (when a federal court is uncertain about whether a petitioner still has an

justice, this court cannot consider the claim on the merits.  <u>Coleman</u>, 501 U.S. at 750.

**IV.**

A status conference is scheduled for **<u>May 13, 2008</u>** at **<u>11:30 a.m</u>**, which counsel may

attend via telephonic conference call.  At this conference, the parties shall be prepared to

recommend a date upon which they would be available for an evidentiary hearing and to discuss

the expected length of the evidentiary hearing, any legal or evidentiary issues that may be raised,

and any additional matters related to the development of the record on Claim 3 and Claim 14.

By the court,


<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Court Judge
Western District of Pennsylvania


Dated: May 5, 2008

cc: All Counsel of Record

---

appropriate state remedy available, it should, in the interests of comity and federalism, direct the
petitioner to exhaust state remedies so that the state court is given every opportunity to address
claims arising from state proceedings.); <u>see</u> <u>Fiebiger v. Beard</u>, Civil Action No. 03-963 (W.D. Pa.
Conti, J.) (employing stay and abey procedure so that the petitioner could return to state court to
litigate claims); <u>Edmiston v. Beard</u>, Civil Action No. 04-237 (W.D. Pa. Gibson, J.) (same);
<u>compare</u> <u>Slutzker</u>, 393 F.3d at 383-86 (finding that the petitioner had demonstrated "cause" to
overcome his procedural default because the Court of Appeals for the Third Circuit had not
approved the stay and abey procedure at the time the petitioner decided to forego a second PCRA
petition and instead continued to seek federal habeas review).